UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK<br>and<br>AXA INSURANCE COMPANY<br>and<br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND LONDON MARKET COMPANIES SUBSCRIBING TO POLICY NUMBER B0823MA1402182,<br><br>               Plaintiffs,<br><br>v.<br><br>CASTLETON COMMODITIES INTERNATIONAL LLC<br>and<br>CASTLETON COMMODITIES TRADING (CHINA) CO. LTD.,<br><br>               Defendants. | DOCKET NO.  15 CV 03976 (JSR) |


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE THE EXPERT AND REBUTTAL REPORTS OF MICHAEL FITZGERALD AND TO <u>PRECLUDE HIS TESTIMONY AT TRIAL</u>**


**DUANE MORRIS LLP**
**One Riverfront Plaza**
**1037 Raymond Blvd., Suite 1800**
**Newark, NJ 07102**

**DEASEY, MAHONEY & VALENTINI, LTD**
**1601 Market Street, Suite 3400**
**Philadelphia, PA 19103**


**RUBIN, FIORELLA & FRIEDMAN, LLP**
**630 Third Avenue, 3rd Floor**
**New York, , NY 10017**

**WHITE FLEISCHNER & FINO, LLP**
**61 Broadway, 18th Floor**
**New York, NY 10006**

**TABLE OF CONTENTS**

**FACTUAL BACKGROUND AND MR. FITZGERALD'S OPINION** .................................1

**I.      BACKGROUND.** ...............................................................................................................1

**II.     MR. FITZGERALD'S REPORTS AND DEPOSITION.** ...............................................2

**LEGAL ANALYSIS** ........................................................................................................................3

**I.      MR. FITZGERALD'S OPINION IS INADMISSIBLE.** ................................................3

        **A.      Mr. Fitzgerald Opines Outside His Expertise.** ......................................................4

        **B.      Mr. Fitzgerald Applied No Specialized or Relevant Expertise in Reaching His Opinions.** ........................................................................................5

        **C.      Mr. Fitzgerald's Proposed Testimony Consists of Inadmissible Conclusions of Law and Fact.** .................................................................................7

        **D.      Mr. Fitzgerald's Proposed Testimony is Inadmissible *Ipse Dixit*.** .......................8

        **E.      Mr. Fitzgerald Rests His Opinions on Insufficient Facts and Data.** ...................10

**II.     THE SUPPLEMENTAL REPORT SHOULD BE STRUCK AS UNTIMELY AND PROCEDURALLY IMPROPER.** ........................................................................11

**CONCLUSION** ..............................................................................................................................12

i

# TABLE OF AUTHORITIES

**Cases**

*523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014) ................................................8

*Algarin v. New York City Dep't. of Corrections*, 460 F. Supp. 2d 469 (S.D.N.Y. 2006) ..................................................................................................................................8

*Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346 (S.D.N.Y. 2003) ..........................................3

*Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145 (D. Alaska 2005) ..............................................................................................................4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).............................1, 3, 10, 11

*GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000)..................................................7

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).........................................1, 3, 11

*Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505 (2d Cir. 1977) ...............................................7

*Nimely v. City of N.Y.*, 414 F.3d 381 (2d Cir. 2005)......................................................................4

*In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004).................................5-7

*S.E.C. v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) ............................................................4, 8

*Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 CIV. 09546 (LMM)(THK), 2007 WL 4157163, 2007 U.S. Dist. LEXIS 85176 (S.D.N.Y. Nov. 16, 2007).......................12

*Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, PA*, 557 F. Supp. 2d 1040 (W.D. Mo. 2008) ........................................................................................5

*U.B. Vehicle Leasing, Inc. v. Atl. Mut. Ins. Co.*, 2004 U.S. Dist. LEXIS 3967, 2004 WL 503729 (S.D.N.Y. Mar. 10, 2004) ..........................................................................4

*United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994).......................................................................7

*United States v. Mulder*, 273 F. 3d 91 (2d Cir. 2001).....................................................................6

*Veleron Holding, B.V. v. Stanley*, 117 F. Supp. 3d 404 (S.D.N.Y. 2015) .....................................10

**Rules**

Fed. R. Evid. 702 ......................................................................................................................3, 10

Great American Insurance Company of New York ("Great American"), AXA Insurance Company, and Certain Underwriters of Lloyd's, London and London Market Companies Subscribing to Policy Number B0823MA1402182 (together "Insurers") move to preclude certain evidence and opinions of Michael Fitzgerald, expected to be offered as an expert by Defendant Castleton Commodities International LLC and Castleton Commodities Trading (China) Co. Ltd. (together "CCI").

Just like CCI's other expert, Douglas Parks, Mr. Fitzgerald's Report reads like a legal brief. In fact, the statement of facts in Messrs. Parks' and Fitzgerald's reports are virtually identical. Because it suffers from many of the same problems that plague Mr. Parks' proffered "opinion", Mr. Fitzgerald's proffered testimony is inadmissible. First, Mr. Fitzgerald lacks the requisite expertise to opine on adjusting marine cargo insurance claims. Second, the proffered testimony relies on no specialized expertise and will therefore be of no assistance to the Court in resolving the issues before it. Third, the majority of Mr. Fitzgerald's report opines on conclusions of law and fact, usurping the Court's role as arbiter of the law and fact finder. Fourth, his proffered testimony is pure *ipse dixit*. Fifth, he bases much of his opinion on insufficient facts and data. Every element of Mr. Fitzgerald's proffered testimony suffers from one or more of these flaws and is inadmissible under the principles espoused in *Daubert* and *Kumho Tire*. Finally, CCI's late-served "supplemental" report by Mr. Fitzgerald is procedurally improper and untimely. Insurers request that the Court strike Mr. Fitzgerald's expert report and preclude him from testifying at trial.

**FACTUAL BACKGROUND AND MR. FITZGERALD'S OPINION**

**I.   BACKGROUND**.

This action arises out of a claim by CCI under a Marine Cargo/Storage & War Risk Policy (the "Policy") for the loss of 87 thousand tons of bitumen from the Shanghai Exchange

Delivery Point, Zhejiang Fukang Petrochemical Co. Ltd. ("Fukang") (the "Loss"). The dispute centers around the "Dishonest Acts Exclusion" in Policy Endorsement No. 2 (Storage & Inland Transit), that excludes coverage for:

> Loss or damage to goods and merchandise caused by or resulting from misappropriation, secretion, conversion, infidelity or any dishonest act on the part of the Assured or other party of interest, his or their employees or agents.

Declaration of James W. Carbin ("Carbin Decl."), Ex. 1.

According to CCI, Fukang misappropriated 87 thousand tons of CCI's bitumen to third parties. Great American and co-plaintiffs denied CCI's claim for the Loss, invoking the Dishonest Acts Exclusion.

## II.     MR. FITZGERALD'S REPORTS AND DEPOSITION.

CCI proffers Mr. Fitzgerald as an expert in the customs and practices of Marine Cargo Insurance. According to his curriculum vitae (attached to the Carbin Declaration as Exhibit 2) (hereinafter "Fitzgerald CV"), his expert report (attached to the Carbin Declaration as Exhibit 3) (hereinafter "Report"), and his deposition (excerpts of which are attached to the Carbin Declaration as Exhibit 4) (hereinafter "Fitzgerald Dep."), Mr. Fitzgerald has *no* experience adjusting insurance claims. *See* Fitzgerald CV; *see also* Report, p. 2.

In the Report, Mr. Fitzgerald offers several opinions constituting his interpretation of the Policy language, his interpretation of other case documents, some factual conclusions, and some statements of law. The Report contains no discussion of custom and practice in the field of adjusting of marine cargo insurance claims.

Following the close of expert discovery, on April 13, 2016, CCI served an additional report by Mr. Fitzgerald billed as a "supplemental report" (hereinafter "Supplemental Report"), attached to the Carbin Declaration as Exhibit 5. The Supplemental Report states that Mr.

Fitzgerald, if called to testify, will rely on a list of "additional materials," comprising a nine-page compendium of documents, deposition testimony, court documents, and pleadings. The Supplemental Report contains no opinions, but does contain a reservation of rights clause.

## **LEGAL ANALYSIS**

**I.      MR. FITZGERALD'S OPINION IS INADMISSIBLE.**

The Court serves as the "gatekeeper" in ensuring that expert evidence meets the threshold requirements for the admission of expert testimony under Rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) (extended beyond scientific experts to all expert testimony by *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)).

Rule 702 requires that, for an expert to opine, the proponent of the evidence must establish that the following requirements are met:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003) (Preska, J.) (proponent of expert testimony bears burden of establishing admissibility).

CCI cannot establish that Mr. Fitzgerald's expected testimony meets any of these criteria. In fact, the majority of his opinions are inadmissible on their face. Mr. Fitzgerald should be precluded from testifying and his reports should be struck because he seeks to assume the role of

3

advocate and offers nothing more than counsel could argue. *See U.B. Vehicle Leasing, Inc. v. Atl. Mut. Ins. Co.*, 2004 U.S. Dist. LEXIS 3967, *23, 2004 WL 503729, at *8 (S.D.N.Y. Mar. 10, 2004) (Chin, J.) (noting that "the expert's role is not to be an advocate who, in essence, is supplanting the role of counsel in making an argument to the jury").

### A. Mr. Fitzgerald Opines Outside His Expertise.

The threshold question for the Court is whether Mr. Fitzgerald is qualified to offer his opinions. *See Nimely v. City of N.Y.*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). CCI cannot meet its burden to show that Mr. Fitzgerald is qualified to offer the opinions he tenders. Mr. Fitzgerald's experience is in underwriting and brokering policies. *See, e.g.,* Fitzgerald CV; Report, p. 2. He has *no* experience adjusting claims and has *never* worked as a claims adjuster. *See* Fitzgerald CV; Report, p. 2. Not only has Mr. Fitzgerald never adjusted a claim, but he has also never been involved with a claim involving the operation of a clause like the Dishonest Acts Exclusion. Fitzgerald Dep., 30:22-31:6. As he testified, his sole experience with the claims side of marine insurance is to "assist" the claims department. Fitzgerald Dep., 20:1-6.

Even assuming Mr. Fitzgerald had the requisite expertise to opine on the custom and practice related to the underwriting and the issuance of marine policies, that experience does not qualify him to offer opinions in the completely distinct field of claims adjusting. *See Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1154 (D. Alaska 2005) (despite extensive experience in underwriting claims, expert disqualified because he lacked experience as to stand alone marine pollution policies); *see also S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 677-78 (S.D.N.Y. 2013) (Forrest, J.) (expertise in general area of structured finance did not qualify expert to render opinions on synthetic CDOs, a very specific type of security).

*Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, PA*, 557 F. Supp. 2d 1040, 1049 (W.D. Mo. 2008) is instructive. In *Travelers*, the plaintiff offered an expert on the question of subrogation. *Id.* at 1041. The putative expert had over 40 years of experience in the insurance industry. *See id.* at 1042-43. Noting that the putative expert "may be an expert in many areas of insurance," the court found that his training was in underwriting, marketing, and brokering, that he had only limited, tangential experience in claims adjusting, and only tangential experience with subrogation. *Id.* at 1049-50. The court held that the putative expert lacked the necessary qualifications to render opinions as to subrogation. *Id.* at 1049-51.

Just like in *Travelers*, Mr. Fitzgerald's experience in the insurance industry does not automatically qualify him as an expert in all aspects of marine insurance. Mr. Fitzgerald does not adjust claims, has no experience as a claims adjuster, and has had only a tangential involvement with the claims side of the business. He is not qualified to render opinions as to the custom and practice in the adjustment of marine cargo insurance claims.

Mr. Fitzgerald also offers opinions as to the intent of the parties or what certain of the parties knew or should have known. *See* Report, pp. 6-7 (opining on what the insurers knew); *id.* at p. 8 (opining on the insurers' intent); *id.* at p. 11 (same). Mr. Fitzgerald lacks the requisite knowledge to offer testimony on these factual matters, which are more "properly presented through percipient witnesses and documentary evidence." *See In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (Kaplan, J.). Any such testimony by Mr. Fitzgerald should be precluded.

  **B.** **Mr. Fitzgerald Applied No Specialized or Relevant Expertise in Reaching His Opinions.**

Regardless of whether he is qualified to opine on claims adjusting in marine cargo insurance, Mr. Fitzgerald applies no specialized expertise in offering his opinions. As his

5

proffered testimony is directed to "lay matters which [the Court] is capable of understanding and deciding without the expert's help," it is inadmissible. *See In re Rezulin*, 309 F. Supp. 2d at 546 (internal citation and quotation omitted); *accord United States v. Mulder*, 273 F. 3d 91, 101 (2d Cir. 2001) (expert testimony not solely directed to matters that a lay jury is incapable of understanding without expert assistance is inadmissible).

The bulk of Mr. Fitzgerald's proffered testimony consists of nothing more than his review of the Policy and the Storage Agreements between CCI and Fukang and his opinions as to the import of those documents. For example, on page 12, Mr. Fitzgerald excerpts a portion of the Policy and opines as to how this clause should impact the reading of the Dishonest Acts Exclusion. *See* Report, p. 12; *see also id.* at p. 8 (discussing the language and meaning of the Dishonest Acts Exclusion); *id.* at p. 14 (reading portions of the Policy "in conjunction" with other portions of the Policy and offering interpretations).

In other portions of the Report, Mr. Fitzgerald reviews the Storage Agreements between CCI and Fukang. With no reference to any relevant custom or practice, Mr. Fitzgerald offers his belief as to how the documents should be interpreted, namely that no agency relationship should be found to exist. *See id*. at pp. 9-11, 14; *see also* Fitzgerald Dep., 77:4-6 (testifying that he reached his opinion regarding the scope of Fukang's agency by reviewing case documents).

In another portion of the Report, Mr. Fitzgerald opines that the Dishonest Acts Exclusion "originated with and/or was created and promulgated by Great American." Report, p. 8. But, again, Mr. Fitzgerald lacks any specialized expertise or experience in the history of dishonest acts exclusions or Great American policies. Rather, he bases his opinion on a review of a handful of documents and a telephone conversation with an underwriter at another firm.

Fitzgerald Dep., 51:8-52:18.  These conclusions are well within the Court's capacity to hear and analyze without resort to expert testimony.

Far from helpful expert testimony, Mr. Fitzgerald offers only "simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case."  *See In re Rezulin*, 309 F. Supp. 2d at 551 (excluding proffered expert testimony as to the history of the product as unhelpful to the trier of fact).  The testimony offers no insight into any area requiring specialized knowledge.  It should be precluded.

### C. Mr. Fitzgerald's Proposed Testimony Consists of Inadmissible Conclusions of Law and Fact.

To the extent that Mr. Fitzgerald applies any specialized knowledge, it is to offer inadmissible opinions as to the relevant law and legal conclusions.  Purported expert opinions as to conclusions of law are inadmissible.  *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion."); *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) ("[I]t is therefore erroneous for a witness to state his opinion on the law of the forum.").  Nor may an expert "usurp either the role of the trial judge in instructing the [fact finder] as to the applicable law or the role of the [fact finder] in applying that law to the facts before it."  *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 110 (S.D.N.Y. 2000) (Pollack, J.) (*quoting United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)); *In re Rezulin*, 309 F. Supp. 2d at 547.

Among other legal analysis and conclusions, Mr. Fitzgerald opines as to the burden of proof on each party (Report, p. 5), how Policies and policy exclusions are interpreted (*id.* at pp. 5-6), the meaning of dishonest acts exclusions (*id.* at p. 8), and a simplistic definition of agency (*id.* at p. 9).  Later in the Report, Mr. Fitzgerald offers opinions as to his definition of "other

7

party of interest." *See id.*, p. 11.  He supports his definition of this phrase with nothing but his own conclusory assertions.  *Id.*; *see also id.* at p. 12.  He also offers his legal opinion as to whether the Policy or the Fukang/CCI Storage Agreements create an agency relationship.  *See id*. at pp. 9-11.  Such testimony is nothing more than "implicit arguments about what [the Policy] construction should be" and is "irrelevant advocacy rather than helpful expert testimony."  *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 648 (S.D.N.Y. 2014) (Failla, J.).

These legal opinions, consisting of statements of the law, conclusions as to the meaning of certain documents, and other legal assertions, are improper and inadmissible.  So intertwined are these inappropriate conclusions, that Mr. Fitzgerald's entire Report is improper.  Both the Report and his testimony should be precluded.

        **D.**      **Mr. Fitzgerald's Proposed Testimony is Inadmissible *Ipse Dixit*.**

Even if the subject of Mr. Fitzgerald's proffered testimony was appropriate, the Report is pure *ipse dixit*.  As evidenced by his deposition, "his sole basis for alleging that these are the governing standards is a subjective inference he has drawn from his own personal experience."  *Algarin v. New York City Dep't. of Corrections*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006) (Rakoff, J.).  His dogmatic assertions, without more, are "not appropriate expert testimony because [they are] not based on reliable methodology."  *Tourre*, 950 F. Supp. 2d at 678; *accord 523 IP LLC*, 48 F. Supp. 3d at 643 ("An expert basing his opinion solely on his experience must do more than aver conclusorily that his experience led to his opinion").

For example, Mr. Fitzgerald offers his belief as to the interpretation of the Dishonest Acts Exclusion in the Policy.  Report, pp. 8-9.  When asked for the basis of his interpretation, Mr. Fitzgerald testified:

> Q. Do you base that understanding upon your review and interpretation of the policy exclusion, sir?

>MR. SHUGRUE: Object to form. You can answer.
>
>BY THE WITNESS:
>
>A. And industry practice and custom.
>
>BY MR. MCELDUFF:
>
>Q. Do you base it on anything else, sir?
>
>A. My years of experience.
>
>Q. In your years of experience and industry custom and practice and your interpretation of the language, do you base your opinion on anything else?
>
>A. No.

Fitzgerald Dep., 67:21-68:10.

Mr. Fitzgerald also offers his opinions as to the definition of one of the key clauses in this case. *See* Report, p. 11. Again, when asked about the basis of his opinion, Mr. Fitzgerald testified:

>Q. What do you base this understanding upon, sir?
>
>A. My understanding of?
>
>Q. What an other party of interest is?
>
>MR. SHUGRUE: Object to form.
>
>BY THE WITNESS:
>
>A. Years of experience in the business.
>
>BY MR. MCELDUFF:
>
>Q. Do you base your understanding of the meaning of other party of interest on anything beyond your experience in the business?
>
>MR. SHUGRUE: Object to form. It's already been asked and answered about the basis for his opinions at the beginning of the deposition but you can answer again.
>
>BY THE WITNESS:

      A. Yes, in my experience.

Fitzgerald Dep., 85:23-86:15.

      Mr. Fitzgerald relied on no authoritative sources in drawing his conclusions. *See id*. at 93:12-18 (testifying that he relied only on what was listed in Exhibit B of the Report) and Report, Ex. B (disclosing no authoritative sources).

      As Judge McMahon observed in *Veleron Holding, B.V. v. Stanley*:

> Rule 702 still requires a valid ... connection to the pertinent inquiry as a precondition to admissibility. Thus, a proffered expert who relied solely on his or her experience in arriving at his or her expert opinion must have based that opinion on sufficient facts or data, and must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts[.] Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.

117 F. Supp. 3d 404, 444 (S.D.N.Y. 2015) (McMahon, J.) (internal citations and quotations omitted). Mr. Fitzgerald fails to connect his proffered testimony to any support other than his conclusory statements. His testimony and statements are inadmissible.

      **E.**    **Mr. Fitzgerald Rests His Opinions on Insufficient Facts and Data.**

      Mr. Fitzgerald rests his conclusions on insufficient facts and data. Even without the other deficiencies of his proposed testimony, this is a fatal flaw. *See* Fed. R. Evid. 702.

      For example, Mr. Fitzgerald admitted that, in reaching his opinions that Great American created and promulgated the Dishonest Acts Exclusion clause, he relied on some language provided by CCI's counsel, a form policy from his own firm, and a telephone conversation with someone at another marine underwriter firm. Fitzgerald Dep., 51:8-54:22. Mr. Fitzgerald did not review any of the submissions by CCI's broker, AON, who proposed the Policy in the first place, in order to see whether AON included the language in its proposed draft. *Id.* at 48:4-10.

10

Mr. Fitzgerald likewise undertook no survey of the origin or evolution of the clause. *Id.* at 54:18-22 (stating that he relied on no other sources in drawing his conclusions). Nor did he review any past AON policies to see if that language was common to AON. *Id.* This review of a handful of documents, taken out of any context and lacking any grounding in proper historical research, utterly fails to meet the standards mandated by *Daubert* and *Kumho Tire*.

At his deposition, Mr. Fitzgerald was repeatedly asked whether he relied on anything beyond his personal experience in reaching his opinions. Mr. Fitzgerald repeatedly admitted that his opinion was based solely upon his experience and was otherwise unsupported. *See, e.g.,* Fitzgerald Dep., 67:12-68:10 (discussing his interpretation of the Dishonest Acts Exclusion). As he stated in his Report: "My opinions are based upon insurance industry custom and practice and custom and usage with regard to the type of coverage involved in this matter." Report, p. 4. His Report and deposition make it clear that he relied on nothing else. It is just as clear that his expertise and knowledge of the customs and practices related to adjustment of marine cargo claims are inadequate to support his opinions, to the extent those opinions are even admissible.

## II.  THE SUPPLEMENTAL REPORT SHOULD BE STRUCK AS UNTIMELY AND PROCEDURALLY IMPROPER.

CCI served Mr. Fitzgerald's "Supplemental Report" on April 13, 2016. It should be struck as untimely and procedurally improper. This Court set strict limits on the service and disclosure of expert reports. Specifically, all expert reports must have been served by September 17, 2015. CMO at p. 2, Jun. 23, 2015 (ECF No. 11). Rebuttal reports were expressly disallowed absent leave of court. *Id.* CCI obtained no such leave.

Although Mr. Fitzgerald offers no new opinions, the reservation of rights clause is still improper. As Magistrate Judge Katz noted when addressing similar reservation of rights language:

11

> Put simply, experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions. If that were the case, there would never be any closure to expert discovery, and parties would need to depose the same expert multiple times.

*Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 CIV. 09546 (LMM)(THK), 2007 WL 4157163, at *6, 2007 U.S. Dist. LEXIS 85176, at *20 (S.D.N.Y. Nov. 16, 2007) (Katz, M.J.).

Discovery on this matter closed months ago. The purportedly "new" information disclosed by the Supplemental Report consists entirely of materials dating from November 2015 or earlier. CCI can offer no justification for waiting until mere weeks before trial to serve this purported supplement. It is improper, untimely, and should be struck.

## CONCLUSION

Mr. Fitzgerald's proffered testimony is a tangle of inadmissible legal conclusions and *ipse dixit* assertions of "custom and practice," in a field in which Mr. Fitzgerald is not qualified to offer opinions. The opinions he does offer are based on nothing but his own personal beliefs rather than a reliable methodology or sufficient facts or data. His proffered testimony offers the Court no assistance in addressing the task before it and will only serve to waste the Court's time. His Supplemental Report fails to correct any of these errors, in addition to being untimely and procedurally deficient. For these reasons, his testimony is inadmissible and the Insurers respectfully requests that his Report and Supplemental Report be struck and he be precluded from testifying at trial.

Dated: April 20, 2016     */s/ James W. Carbin*
James W. Carbin (JC-5004)
P. Ryan McElduff (PM-2596)
DUANE MORRIS LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800

12

       Newark, New Jersey 07102-3889
       (973) 424-2000
       jwcarbin@duanemorris.com
       PRMcElduff@duanemorris.com

       -and-

       George R. Zacharkow (GRZ 7099)
       DEASEY, MAHONEY & VALENTINI, LTD.
       1601 Market Street, Suite 3400
       Philadelphia, PA 19103
       (215) 587 – 9400
       gzacharkow@dmvlawfirm.com

       Attorneys for Plaintiff
       Great American Insurance Company
       of New York


       **RUBIN, FIORELLA & FRIEDMAN LLP**

BY:    _/s/ James Mercante_
       James Mercante (JM 4231)
       Michael Stern (MS 9113)
       Lawrence B. Brennan (LB 4078)
       Attorneys for Plaintiff AXA Ins. Co.
       630 Third Avenue, 3rd Floor
       New York, NY 10017
       E-mail: mstern@RubinFiorella.com
       jmercante@RubinFiorella.com
       lbrennan@RubinFiorella.com




       **WHITE, FLEISCHNER & FINO, LLP**

By:    _/s/ Jonathan S. Chernow_
       Jonathan S. Chernow (JSC-7339)
       Janet P. Ford (JPF 8137)
       Benjamin A. Fleischner (BAF-7006)

13

              William M. Billings (WMB 8954)
              Attorneys for Excess Insurers
              61 Broadway, 18th Floor
              New York, NY  10006
              E-mail: JChernow@WFF-LAW.com
              JFord@WFF-LAW.com
              BFleischner@WFF-LAW.com